UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEBORAH WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:15-cv-00822-TWP-DML |
| | ) | |
| EOS CCA, | ) | |
| | ) | |
| Defendant. | ) | |

## Report and Recommendation
## on Cross-Motions for Summary Judgment

The Honorable Tanya Walton Pratt has referred cross-motions for summary judgment for a report and recommendation by this Magistrate Judge as to their appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge deny plaintiff Deborah Walton's[1] motion for summary judgment and grant the motion for summary judgment filed by defendant EOS CCA.

## **Introduction**

Ms. Walton had also sued AT&T and Experian Corporation, but the parties reached agreements resulting in the dismissal of her claims against them. *See* Dkts. 47, 62. EOS is a debt collector, and Ms. Walton seeks relief against it under

---

[1] Ms. Walton has used in litigating this case two different spellings of her first name. In her *pro se* complaints and the affidavits she filed on summary judgment, she used "Deborah," but in her deposition she testified that her first name is spelled "Debora." (*See* Dkt. 93-1, Transcript at p. 4, lines 16-19).

the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA") arising out of collection efforts by EOS of a consumer debt Ms. Walton allegedly owed AT&T for U-verse television services.

Both Ms. Walton and EOS seek summary judgment as to all claims. There are a number of entries on the docket related to the parties' summary judgment filings. Because of the order (or disorder) of the motions and briefs that were filed, it is helpful to identify the relevant filings and to note at the outset the materials properly before the court. The court first addresses Ms. Walton's filings and then EOS's filings.

Filings by plaintiff Deborah Walton

1.    Ms. Walton filed three different one-page documents described as motions for summary judgment. This happened because Ms. Walton filed an initial one-page motion for partial summary judgment (at Dkt. 87), a supporting brief (Dkt. 88), and a group of evidentiary materials (Dkt. 89), but then later wanted to make clear the extent of her motion. She filed two more one-page motions (Dkt. 91 and Dkt. 92) stating she is moving for summary judgment on her claims under the FDCPA and FCRA and on EOS's bona fide error defense. Two of the three documents (Dkt. 87 and Dkt. 91) are duplicates, except for a citation error. The court will treat the three motions (Dkts. 87, 91, and 92) as Ms. Walton's "motion" for summary judgment.

2.    Ms. Walton also filed two separate sets of evidentiary materials, at Dkt. 89 and at Dkt. 106. One reason she did this is that with respect to the first set

2

of evidentiary materials (at Dkt. 89), Ms. Walton made *no* citations to the materials in her supporting memorandum of law (at Dkt. 88), including within its Statement of Material Facts not in Dispute and in a separate section she labeled as "Facts." When EOS filed its cross-motion for summary judgment and a combined brief in support of its own motion and in opposition to Ms. Walton's motion, EOS objected to the court considering *any* of Ms. Walton's materials or her "facts" because her brief did not comply with Local Rule 56-1(e) requiring that facts be supported by appropriate citations to admissible evidence.

When Ms. Walton filed her combined brief (Dkt. 103) to respond to EOS's motion for summary judgment and to support her motion, she repeated the same Statement of Material Facts not in Dispute, re-filed her evidentiary designations (at Dkt. 106), and provided citations to those designations within her statement of material facts. Because of the re-filing of evidentiary designations, the court can (and will) ignore the documents filed at Dkt. 89 and consider her evidence at Dkt. 106, except for two matters. Docket 89 includes two affidavits that are not duplicated within Dkt. 106. For these two affidavits, the court will accept as part of the record on summary judgment the documents as they appear at Dkt. 89, to the extent citations to them are made in Ms. Walton's brief. They are (a) signed

Affidavit of Deborah Walton (Dkt. 89 at pp. 115-118)[2] and (b) Affidavit of Richard Redden, Jr. (Dkt. 89 at pp. 123-124).[3]

3.      Ms. Walton's memoranda of law in support of her own motion and/or in opposition to the defendant's motion for summary judgment are at Dkts. 88, 103,[4] and 108, and are considered as part of the record on summary judgment, except that the two facts sections of Dkt. 88 (*see* Dkt. 88 at pp. 3-6) are not considered because no references to admissible evidence were made in this brief.  As noted, Ms. Walton mostly cured this problem with Dkt. 88 by providing evidentiary citations in Dkt. 103.

<u>Filings by defendant EOS CCA</u>

1.      EOS's motion for summary judgment at Dkt. 94 is before the court.

2.      EOS's memoranda of law in support of its own motion and/or in opposition to Ms. Walton's motions are before the court at Dkts. 93[5] and 107.

---

[2]      An unsigned copy of this affidavit is at Dkt. 106-11.

[3]      In essence and for the most part, Ms. Walton's original motion, brief, and evidence (at Dkts. 87, 88, and 89) were re-done as a cross-motion with a new brief and re-filed evidence, at Dkts. 103 (brief) and 106 (evidence).

[4]      The legal arguments made in Dkt. 88 are essentially duplicated, but expanded upon, in Dkt. 103.  At Dkt. 108, Ms. Walton filed a sur-reply to address evidentiary matters in response to EOS's reply brief.  Ms. Walton's sur-reply also contains new legal arguments that were not raised by her in her original brief or her response/reply brief.  New legal arguments in the sur-reply brief are waived. *See Darif v. Holder,* 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived.")

[5]      When it electronically filed its supporting memorandum of law at Dkt. 93, EOS used a "motion" event code, but Dkt. 93 is not a motion.

3.      EOS's evidentiary designations are before the court at Dkts. 93-1 through 93-8 and at Dkt. 107-1.[6]

### Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines the facts that are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inference from the evidence in favor of the nonmoving party. *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009). When evaluating cross-motions for summary judgment, therefore, the court construes the evidence and its reasonable inferences in favor of the party against which the particular motion under consideration is made. *Metro Life Ins. Co. v. Johnson,* 297 F.3d 558, 561-62 (7th Cir. 2002).

The party that bears the burden of proof on an issue may not rest on her or its pleadings, but must affirmatively demonstrate by designating specific facts on each essential element of her or its case that there is a genuine issue of material fact that requires trial. *Celetox Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if "there is sufficient

---

[6]      EOS also submitted an email with an attached document at Dkt. 107-2 to show that it had produced certain information to Ms. Walton's counsel. This document is not strictly an evidentiary designation, but is properly before the court in evaluating Ms. Walton's request that the court not consider certain evidence because it allegedly was not produced in discovery.

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby,* 477 U.S. at 249. Disputes about irrelevant facts do not matter; only factual disputes that might affect the outcome of the suit in light of the substantive law will prevent summary judgment. *Liberty Lobby,* 477 U.S. at 248; *JPM, Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir. 1996). But if a reasonable fact-finder could find for the party opposing the motion, then summary judgment is not appropriate. *Olayan v. Holder,* 833 F. Supp. 2d 1052, 1061 (S.D. Ind. 2011).

To evaluate the parties' cross-motions, the court first addresses certain evidentiary objections made by the parties. It will then set forth facts about which there is no genuine dispute. The court will also address areas where the parties dispute the evidence or the reasonable inferences to be drawn from the evidence. But as the court will explain, the factual disputes are not material (*i.e.,* they are not outcome determinative) under the applicable substantive law.

## Evidentiary Issues

Before addressing the substantive arguments of the parties, the court first resolves some evidentiary issues they have raised. In making these evidentiary rulings, the court does not suggest that all other "evidence" proffered by one party or the other is necessarily accorded evidentiary value. For example, some "facts" included in affidavits are not facts at all, but are legal conclusions or arguments the court is not required to accept. *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("Because legal argumentation is an expression of legal opinion and is not a

recitation of a "fact" to which an affiant is competent to testify, legal argument in an affidavit may be disregarded.")

Both parties object to certain evidence designated by the other. The court first addresses objections made by EOS.

## I.    Evidentiary Objections by EOS

Because Ms. Walton's response/reply brief includes citations to her evidentiary submissions, the court overrules EOS's objection that Ms. Walton's evidentiary submissions are not properly before the court on the ground citations to them were not included in Ms. Walton's opening brief.

The court also declines to reject affidavits submitted by Ms. Walton on the ground they are not dated.[7]

The court overrules EOS's hearsay objection to an invoice for attorneys' fees. Ms. Walton cured the hearsay problem when she submitted an affidavit signed by Mr. Cento, at Dkt. 106-16, authenticating the invoice.

The court GRANTS EOS's objection to all affidavit testimony proffered by Ms. Walton of an affiant relating to an assertion of another where the assertion is offered by Ms. Walton to prove the truth of the matter asserted and for which Ms. Walton has not established a hearsay exception. *See* Fed. R. Evid. 801 (defining

---

[7]    Ms. Walton is, however, a frequent litigant in this court and the court directs her attention to 28 U.S.C. § 1746 regarding the contents of an affidavit that is not sworn, including that a date of execution is required. The statute requires a date of signature and a statement substantially in the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." Ms. Walton risks the exclusion of affidavits if the requirements of 28 U.S.C. § 1746 are not satisfied in the future in this and other cases.

hearsay), 802 (providing that hearsay is not admissible except as otherwise allowed by federal statute, the Federal Rules of Evidence, or other rule prescribed by the Supreme Court), and 803 and 807 (listing exceptions to the rule against the admission of hearsay).  *See also Cortezano v. Salin Bank & Trust Co.,* 680 F.3d 936, 942 (7th Cir. 2012) (inadmissible hearsay is properly disregarded on summary judgment).

The court also GRANTS EOS's objection to affidavit testimony proffered by Ms. Walton which is not grounded in the affiant's personal knowledge.  *See* Rule 56(c)(4), requiring that affidavit testimony must be made on personal knowledge and show that the affiant is competent to testify on the stated matters.

The specific affidavit testimony excluded by the court because of hearsay or because of lack of personal knowledge is identified below.

A. Walton Affidavit, Dkt. 89, pp. 115-118 (the unsigned version is at Dkt. 106-11):

1. The portion of paragraph 2 regarding what a representative from Financial Pacific told Ms. Walton is excluded as hearsay.

2. The portion of paragraph 3 regarding what a representative from Equifax told Ms. Walton is excluded as hearsay.

3. The portion of paragraph 9 regarding what a representative from AT&T told Ms. Walton is excluded as hearsay.

4. The portions of paragraph 10 about what representatives from Equifax, Experian, and Trans Union told Ms. Walton are excluded as hearsay.

5.      The portion of paragraph 12 about what a representative of Financial Pacific told Ms. Walton about a background check of her in April 2014 is excluded as hearsay.  The portions of paragraph 12 about what Financial Pacific (a) purportedly did in connection with an alleged application, (b) purportedly pays to a Broker, and (c) purportedly would approve as a good borrower are excluded because Ms. Walton cannot establish the requisite personal knowledge to sponsor such evidence.

6.      The portion of paragraph 13 about what a representative of Financial Pacific told Ms. Walton is excluded as hearsay.

B.  <u>Walton Affidavit, Dkt.106-1</u>

1.      The portion of paragraph 4 about what a representative from Equifax told Ms. Walton is excluded as hearsay.

2.      The portion of paragraph 5 about what a representative from Experian told Ms. Walton is excluded as hearsay.

3.      The portions of paragraph 6 about what representatives from Equifax, Experian, and Trans Union told Ms. Walton are excluded as hearsay.

4.      The portions of paragraph 7 purporting to establish when and what the credit agencies did as part of an investigation are excluded because Ms. Walton does not have personal knowledge about what they did.

5.      The portion of paragraph 11 about what Bank of America did or asserted with respect to giving instructions to credit reporting agencies about mortgage accounts is excluded as hearsay.

6.    The portions of paragraph 14 about what Financial Pacific and other lenders, banks, and finance companies do or have done when Ms. Walton has submitted broker applications are excluded because Ms. Walton does not have the requisite personal knowledge to establish what they have done or not done in the course of due diligence.  This exclusion includes Ms. Walton's description of what Financial Pacific allegedly did in April 2015.  The portion of paragraph 14 about what a representative of Financial Pacific told Ms. Walton is excluded as hearsay. The portions of paragraph 14 purporting to describe what Ms. Walton's brother was told and what he did in connection with an application to finance goods are excluded as hearsay and because of lack of personal knowledge.

C.  Affidavit of Dominique Fields, Dkt. 106-10

1.    The portions of paragraph 4 about (a) what Ms. Walton told Mr. Fields and (b) what a representative of Financial Pacific told Mr. Fields are excluded as hearsay.

2.    Paragraph 5 contains Mr. Fields's attempt to justify how his testimony in another affidavit (Dkt. 106-12, addressed below) is not inconsistent with his earlier deposition testimony or that any inconsistency has a rational explanation. While the court considers Mr. Fields's explanation, the explanation does not merely clear up ambiguous or confusing prior testimony but asserts new testimony that is wholly inconsistent with Mr. Fields's prior deposition testimony.

D.  Affidavit of Dominique Fields, Dkt. 106-12

1.      Mr. Fields's affidavit testimony about his actions in connection with an alleged Financial Pacific Broker Application are excluded as sham testimony because it cannot be reconciled with prior deposition testimony given by Mr. Fields, and there is no reasonable basis for concluding that Mr. Fields had a mere memory lapse or is using his affidavit only to clear up ambiguous or confusing prior testimony. *See Cook v. O'Neill,* 803 F.3d 296, 298-99 (7th Cir. 2015) ("A 'sham affidavit' is an affidavit that is inadmissible because it contradicts the affiant's previous testimony . . . unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse.")

In his deposition, Mr. Fields testified that (1) as part of his job as an employee of Ms. Walton's company known as E-Leases, he does not help submit documents that a financing company requires from E-Leases and that that task is usually done by Ms. Walton; (2) he did not submit an application to Financial Pacific on behalf of E-Leases; and (3) the only contact he had with anyone at Financial Pacific was an email he sent requesting Financial Pacific to provide him with application forms that would need to be completed.  (*See* Dkt. 93-1, Fields' deposition transcript at pp. 11-14).  Mr. Fields was quite clear that he had NO contact with anyone at Financial Pacific except for an email (that is not in the record) requesting application forms.

In his affidavit, at Dkt. 106-12, Mr. Fields testifies—in contrast—that he completed two Financial Pacific application documents on behalf of E-Leases (a

11

Broker Application and a Third Party Origination Agreement), that he sent those documents to the Broker Division of Financial Pacific, and that he also telephoned the Broker Division of Financial Pacific and spoke to a representative. This affidavit testimony, at paragraphs 3 and 4, is stricken as sham testimony.

2.    In addition, the testimony at paragraphs 4 and 5 of Dkt. 106-12 about what either Ms. Walton told him or what Ms. Walton or he was told by a representative of Financial Pacific are excluded as hearsay.

E.    Affidavit of Ronald Walton, Dkt. 106-13

The testimony at the second paragraph 2 (Ronald Walton's affidavit contains two paragraphs numbered as "2") about what Ms. Walton told Ronald Walton and the testimony about what Financial Pacific told Ms. Walton are excluded as hearsay.

F.    Affidavit of Richard Redden, Jr., Dkt. 89, at pp. 123-24

1.    The portions of paragraph 4 about what someone at E-Leases told Mr. Redden are excluded as hearsay.

2.    The portions of paragraph 5 about what Ms. Walton told Mr. Redden and about what Financial Pacific told Ms. Walton are excluded as hearsay.

## II.    Evidentiary Objections by Ms. Walton

Ms. Walton raises objections to four pieces of evidence submitted by EOS: (1) a Declaration of Benjamin Ribeiro (Dkt. 93-5), who is employed as a VP of Consumer Relations at EOS; (2) a document identified as Exhibit B to Mr. Ribeiro's Declaration (Dkt. 93-5 at p. 23), which he testifies was provided to EOS by AT&T

about Ms. Walton's account; (3) a Declaration of Peter Fruge (Dkt. 93-7), who is employed as a Supervisor, Portfolio Services for Financial Pacific Leasing; and (4) a United States Postal Service Tracking Report, which was attached as an exhibit to EOS's reply brief, at Dkt. 107-1, pp. 2-3.

### A. Objections based on alleged non-disclosure

The grounds for Ms. Walton's objections to the first three items are substantially identical. She contends EOS should not be permitted to rely on the evidence because EOS did not properly disclose the witness and/or the witness's exhibits during discovery.  Although Ms. Walton did not frame her argument with reference to any particular rule or legal doctrine, her contention falls under Fed. R. Civ. P. 37(c), which generally requires the court to exclude information or a witness that a party did not properly provide or identify as required by Rule 26(a) or 26(e), unless the failure to disclose was substantially justified or is harmless.  Instead of exclusion, a court can decide to impose different sanctions.  *See* Rule 37(c)(1); *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003) (addressing court's discretion in applying Rule 37(c)(1)).

The court rejects Ms. Walton's objections because there is an insufficient showing that the evidence and witnesses were not disclosed to her.

1.    As to Mr. Ribeiro, EOS's answers to interrogatories identified him as a knowledgeable witness; EOS's preliminary witness and exhibit lists identified EOS's business records regarding the collection and credit reporting activity related to Ms. Walton (which is the subject matter of Mr. Ribeiro's declaration); and EOS's

counsel offered to produce an EOS Rule 30(b)(6) witness, but Ms. Walton's lawyer declined to depose a Rule 30(b)(6) witness.  He said he was interested in deposing only the EOS person (Mr. McCrevan) who had processed an Automated Consumer Dispute Verification report (related to the FCRA claim).  (*See* Dkt. 98 and exhibits thereto.)

2.      With respect to Exhibit B to Mr. Ribeiro's declaration, EOS sent the document to Ms. Walton's lawyer on August 25, 2016.  (*See* Dkt. 107-2).

3.      With respect to the Declaration of Peter Fruge, which authenticates Financial Pacific's records, EOS's counsel has represented that he served a subpoena on Financial Pacific with a copy to Ms. Walton's counsel, produced to her counsel copies of the materials Financial Pacific provided in response to the subpoena,[8] and told Ms. Walton's counsel that EOS would use a records custodian from Financial Pacific as a witness. (*See* Dkt. 98).[9]

---

[8]      Mr. Fruge's declaration includes a copy of the subpoena served by the defendant's counsel on Financial Pacific.  *See* Fruge Declaration, Dkt. 93-7 at pp. 8-11.

[9]      Ms. Walton was represented by counsel during certain periods of this litigation.  While she was represented, EOS's counsel was required to communicate with her counsel.  For purposes of deciding whether evidence should be excluded as a sanction under Rule 37(c)(1), the court finds no reason to question the accuracy of the statements EOS's counsel has made as an officer of the court about disclosures to Ms. Walton's counsel. Ms. Walton's statements in an affidavit that *she* did not get disclosures do not fairly call into question EOS's counsel's statements. Moreover, based on the relatively narrow issues involved in this litigation (EOS's actions or inactions with respect to one AT&T account, and Ms. Walton's alleged damages resulting from EOS's actions), there is no reasonable basis for finding Ms. Walton is unfairly surprised or prejudiced by EOS's proof of records in its own files regarding Ms. Walton and the subject account or the use of a records custodian to sponsor the records produced by Pacific Financial in response to a subpoena.

14

The court determines that EOS sufficiently disclosed the witnesses and the documents.  The court overrules Ms. Walton's objections to (1) the Ribeiro Declaration, (2) Exhibit B to that Declaration (and the other exhibits to the Declaration), and (3) the Fruge Declaration (and its exhibits).

### B. Hearsay objection

Ms. Walton has objected on hearsay grounds to the admissibility of a United States Postal Service Tracking Report that EOS attached to its reply brief at Dkt. 107-1.  The document is a printout from USPS.com reporting the tracking of a certified mailing for which the tracking number (the number on the green card) is 70141820000013296266 (the same number on a green card Ms. Walton used in a certified mailing to EOS). EOS asks the court to take judicial notice of the contents of the Tracking Report. Judicial notice is generally reserved for the acknowledgement of matters of "common knowledge," and a Tracking Report is not a good fit.  *See Demos v. City of Indianapolis,* 302 F.3d 698, 706 (7th Cir. 2002) (taking judicial notice of matters of public record such as statutes because they "fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice").  EOS did not respond to Ms. Walton's argument that the Tracking Report should be excluded as hearsay, and the court therefore excludes the Tracking Report as evidence admissible on summary judgment.[10]

---

[10]      EOS did not argue that the residual hearsay exception under Fed. R. Evid. 807 applies.

## Undisputed Material Facts

EOS, identifying itself as a debt collector, sent to Ms. Walton a letter dated January 27, 2015, seeking to collect a debt allegedly owed by Ms. Walton to AT&T. (*See* letter at Dkt. 106-2). The debt was for U-verse television services at Ms. Walton's home in Carmel, Indiana. (Walton Aff., Dkt. 89, ¶ 5; Walton Dep., p. 6, lines 7-12). The letter identified the AT&T account number as 864119170 and the total due as $268.47. It also identified an account number assigned by EOS (13075918). (*Id.*). Ms. Walton received the letter on or about January 29, 2015. (Walton Dep., p. 30, lines 5-9).[11] That exact AT&T account number (864119170) and exact amount due ($268.47) were supplied by AT&T to EOS when AT&T assigned the account to EOS. (Ribeiro Declaration,[12] ¶¶ 7-8 and Exh. B thereto). EOS relied on the accuracy of the information supplied by AT&T to EOS about Ms. Walton's alleged debt to AT&T. (Ribeiro Dec., ¶¶ 6-8).

On February 5, 2015, Ms. Walton telephoned EOS about the January 27 collection letter she received. The call was recorded; the recording was played during Ms. Walton's deposition and transcribed by a court reporter as part of the deposition transcript.[13] Ms. Walton confirmed to the EOS representative that her name is Debora Walton and she has an address of P. O. Box 598, Westfield, but she

---

[11]    Excerpts from Ms. Walton's deposition are at Dkt. 93-1.

[12]    The declaration of Benjamin Ribeiro, who is employed by EOS as a VP of Consumer Relations, is at Dkt. 93-5.

[13]    *See* Walton Dep., p. 127, line 5 to p. 129, line 24.

told the EOS representative that "It's not my account." She said she had "no clue" who uses the services represented by the account. She said, "You've got the wrong person" and "there's probably a million Debora Waltons in the world, so you've got the wrong account." She denied—twice—that the last four digits of her social security number are 4838. (Walton Dep., p. 127, line 24 to p. 128, line 5, and p. 128, line 23 to p. 129, line 17).

Ms. Walton lied to the EOS representative during the February 5, 2015 call. The last four digits of her social security number are 4838. (Walton Dep., p. 130, lines 10-16).[14]

Ms. Walton called EOS again on February 27, 2015, regarding the January 27 collection letter. The call was recorded, and a transcript of the call is at pages 130-139 of Ms. Walton's deposition. Ms. Walton told the representative, "It's not my account." She said:

> It's not my account, so I'm just calling to let you know that doesn't belong to me. I'll send a letter because I had drafted a letter that I haven't sent yet, but I'll send a letter letting you guys know that.

(Walton Dep., p. 132, lines 11-15). Ms. Walton then stated, "I don't have an account that I owe AT&T anything." (*Id.*, lines 18-19). Ms. Walton lied to this representative too about her Social Security number. She falsely denied that the

---

[14]     Ms. Walton contends she had a good reason to lie about her Social Security number because she never verifies her Social Security number over the phone. (Walton Aff., Dkt. 106-1, ¶ 8). She states that she "was not about to confess to an entire Social Security number that I was not give[n] the entire number." *Id.* The EOS representative did not ask her to "confess" to an entire Social Security number, and why Ms. Walton lied, even if her reason is true, is not material.

last four digits are 4838.  (*Id.,* p. 132, lines 20-25 and at p. 139, line 24 to p. 140, line 5).

During the February 27 call, Ms. Walton asked whether the matter was being reported to her credit report.  The representative explained that EOS's reporting goes by the Social Security number connected with an account so that if 4838 are not the last four digits of Ms. Walton's SSN then "it can't be reported to your credit."  (*Id.*, p. 135, lines 14-21). Ms. Walton again denied (falsely) that 4838 represented her SSN.  (*Id.,* p. 135, lines 22-23).  Ms. Walton continued to deny that the account is hers, and told the representative that she was putting EOS "on notice."  She said that she knows her rights under the Fair Credit Reporting Act and "Fair Credit Collection Act," and "Now I'm putting you on notice it's not mine. It's that simple."  (*Id.,* p. 137, lies 8-16).  She said she would answer no other questions.  (*Id.,* p. 137, lines 21-23).

The representative told Ms. Walton that Ms. Walton could write a letter of dispute if she wanted, which, upon receipt would result in an investigation and if, "[a]fter that point, if it is the case that the balance is owed, then a validation letter and itemized bill will be sent to your address."  Ms. Walton answered, "Okay.  It's not my account, and I told you, so I'm putting you on notice."  The call then ended. (*Id.*, p. 138, line 19 to p. 139, line 13).

A third conversation between Ms. Walton and EOS was played and transcribed during Ms. Walton's deposition.  The conversation concerned EOS's reporting of the AT&T account to Trans Union.  In response to Ms. Walton's

question, the EOS representative stated that the "account is recently reported to the credit reporting agency on May 8, 2015." (*Id.,* p. 143, line 15 to p. 144, line 4).

Ms. Walton sent at least one letter to EOS regarding the alleged debt to AT&T. She sent by certified mail/return receipt requested a letter (attached as Exhibit C to her second amended complaint, *see* Walton Dep. Exh. 3, Dkt. 93-2 at p. 44) addressed to EOS in Norwell, Massachusetts. The letter was delivered by the Post Office and signed for on behalf of the addressee (EOS CCA) on March 14. (Walton Dep., p. 37, lines 2-11, authenticating green card she received back from her certified mailing, Walton Dep. Ex. 4, the green card, at Dkt. 93-2, p. 53). The date on the letter itself is February 5, 2015 (*see* Dkt. 93-2 at p. 44 and Dkt. 106-4), and it references the certified mail tracking number (7014 1820 0000 1329 6266) that matches the green card tracking number Ms. Walton received back from the Post Office.

In the letter, Ms. Walton wrote that she does not "own [sic] AT&T any money under the account number listed above. If you continue to try and collect on an account I don't own [sic], I will exercise my rights in Federal Court under the Fair Collection Practice Act." (*See* Dkt. 106-4). In her deposition, Ms. Walton testified that her uses of the word "own" in both sentences were typographical errors; she meant to type "owe" in both places. (Walton Dep., p. 31, line 19 to p. 32, line 6).

Ms. Walton insists in her affidavit that she sent this letter by certified mail on or about the date she had typed on the letter (February 5, 2015), even though it is undisputed that the certified mailing did not reach EOS until at least March 14

(as shown on the returned green card).  EOS asks the court to decide it is undisputed that the February 5, 2015 letter (at Dkt. 106-4) was not sent by Ms. Walton until sometime in March 2015.  For purposes of summary judgment, the court will accept Ms. Walton's version provided on summary judgment (that she sent the letter on or about February 5), but also notes that it is not a material fact in this case.  As discussed later, EOS is entitled to summary judgment on Ms. Walton's FDCPA claims even if Ms. Walton sent this letter on or about February 5, 2015.[15]

EOS responded to Ms. Walton's certified mailing by its letter dated April 7, 2015 (*see* Dkt. 106-5), and stated it had verified as correct Ms. Walton's alleged debt to AT&T.  The letter (a) lists Ms. Walton's name, home address, P. O. Box mailing address, and the last four digits of her Social Security number, (b) identifies AT&T as the original creditor, lists AT&T's account # as 864119170, and lists a balance due of $268.47, and (c) identifies the account number EOS had assigned to the collection (13075918).  The only verification of the debt performed by EOS was that it checked the information that AT&T had sent to EOS.  (McCrevan Dep., Dkt 106-7, p. 81, lines 15-18).  The information sent by AT&T to EOS regarding Ms.

---

[15]   Ms. Walton also testified by affidavit that she sent another dispute letter to EOS, on January 29, 2015, by regular mail.  (Walton Aff., Dkt. 106-1, ¶ 1:  "I sent EOS CCA two dispute letters one on January 29, 2015 one via the US Postal Service and one February 5, 2015 by certified mail").  But she did not submit such a January 29 letter with her evidentiary designations, and its contents are unknown. Further, whether or not Ms. Walton submitted another letter is not material to the resolution of the parties' summary judgment motions.

Walton's alleged debt to AT&T, and which EOS relied upon as accurate, matches all of these data points (name, home address, P. O. Box mailing address, last four digits of Social Security number,[16] AT&T account number of 864119170, and balance due of $268.47). (*See* Ribeiro Decl., Dkt. 93-5, ¶¶ 6, 8 and Exh. B thereto, at p. 23).

EOS reported the AT&T account to Experian and Trans Union (which are credit reporting agencies, or CRAs) in March 2015. (Ribeiro Declaration, Dkt. 93-5, ¶ 10). EOS's reporting to the CRAs did not reference an account number for AT&T, but only the number EOS had assigned for its record keeping purposes.[17] EOS reported that the account was disputed by Ms. Walton. (*Id.,* ¶¶ 10-12).

Soon thereafter (the exact date is unknown), EOS received through the E-Oscar system an ACDV report. (Ribeiro Declaration, ¶ 14)**.** "E-Oscar" is "an online system run by the credit bureaus which stockpiles every dispute made out to the credit bureaus. . . ." In E-Oscar, "disputes are made into what is called an ACDV," which stands for "Automated Consumer Dispute Verification." (*See* EOS policies and procedures relating to the Fair Credit Reporting Act, at Dkt. 93-5, p. 8). EOS received a second ACDV report at a later time. These reports recount disputes

---

[16]    Ms. Walton confirmed in her deposition the accuracy of the data points of her home address, P. O. Box mailing address, and last four digits of her Social Security number. *See* Walton Dep., p. 6, lines 7-12 (home address), p. 7, line 1 to p. 8, line 5 (P. O. Box mailing address), and p. 6, lines 3-5 (last four digits of SSN).

[17]    Ms. Walton attempted to create a question of fact about whether EOS reported the AT&T account number to the credit reporting agencies by relying on her own affidavit testimony about what persons associated with the credit reporting agencies told her. Because what those persons allegedly told Ms. Walton is hearsay and not admissible evidence, there is no genuine dispute of fact.

made by Ms. Walton to CRAs regarding credit reporting by EOS for the AT&T account. Only these two disputes regarding credit reporting are shown by the record on summary judgment.

In her first ACDV (Walton Dep. Exhibit 12, Dkt. 93-3 at pp. 30-31), Ms. Walton wrote: "Submitted a letter stating that this does not belong to me." (*See* Dkt. 93-3 at p. 30).[18] Andrew McCrevan of EOS processed this ACDV on or about April 6, 2015. (McCrevan Dep., p. 94, lines 20-23). In doing so, he compared Ms. Walton's personal information (name, Social Security number existing in EOS's system) and the information EOS had received from AT&T about Ms. Walton's account against the information provided in the ACDV. (McCrevan Dep., p. 73, line 18 to p. 74 line 9). Mr. McCrevan did not contact AT&T. (*Id.*, p. 77, lines 12-14). He did not believe he had a reason to question the accuracy of the data that EOS had received from AT&T. (McCrevan Dep., p. 75, line 25 to p. 76, line 4, and at p. 77, lines 6-11). In response to this ACDV, EOS verified the account. (*Id.,* p. 86, line 25 to p. 87, line 3).

In her second ACDV (which apparently was made to both Experian and Trans Union), Ms. Walton wrote: "EOS stated I owed for Uverse Acct 864119170. Actual ATT Acct 119864170. ATT sent refund check indicating I did not owe an addtl amount." (Dkt. 93-3 at p. 32). After the second ACDV, EOS closed its collection account and requested Experian and Trans Union to delete the account.

---

[18]    EOS's deposition witness, Andrew McCrevan, stated that the first ADCV was received by EOS through the E-Oscar system on April 6, 2015. (McCrevan Dep., Dkt. 106-7, p. 72, line 23 to p. 73, line 3).

(Ribeiro Declaration, ¶ 16).  In other words, EOS's response to this ACDV was to "delete" the account.  (McCrevan Dep., p. 86, lines 18-24).

On October 19, 2015, Ms. Walton paid $268.47 to AT&T for her outstanding U-verse bill.  (Walton Dep., p. 126, lines 8-18, and Dep. Ex. 14, Dkt. 93-3 at p. 34).  Ms. Walton attests she paid AT&T the amount claimed as the outstanding U-verse bill only because she needed to buy a new iPhone on October 19, 2015, and not because she believed she owed the money.  (Walton Aff., Dkt. 106-1, ¶ 10).

### Certain Fact Disputes Between the Parties

Before addressing the parties' arguments on Ms. Walton's legal claims, it is appropriate to highlight three subject areas about which the parties have offered conflicting versions of facts or inferences to be drawn from facts, and to evaluate these alleged conflicts. They concern (1) whether Ms. Walton actually owed AT&T $268.47 for U-verse television services during the time EOS sought to collect it and had reported the matter as disputed to credit reporting agencies; (2) whether the AT&T account EOS sought to collect actually belonged to Ms. Walton; and (3) whether Ms. Walton possibly suffered damages because of an alleged denial of broker business through Financial Pacific.

### Whether Ms. Walton Actually Owed AT&T

There is an issue of fact whether Ms. Walton actually owed AT&T $268.47 on an outstanding bill for U-verse television services at any time between EOS's first communication to Ms. Walton, by letter dated January 27, 2015, and the date she paid AT&T $268.47 on an outstanding bill for U-verse television services on October

19, 2015. In her affidavits, Ms. Walton attests that she did not owe AT&T because she already had paid everything she legitimately owed for U-verse services before even receiving EOS's initial January 27 collection letter. She also states she received a check from AT&T in April 2015, which she interprets as proof that she did not legitimately owe AT&T anything. (Walton Aff., ¶ 9, Dkt. 89 at p. 116).[19] But the undisputed fact she paid AT&T $268.47 on October 19, 2015, for an outstanding amount on the account that matches AT&T's October 11, 2014 collection letter to Ms. Walton (Dkt. 106-15) makes reasonable an inference that Ms. Walton owed the money at all times EOS was involved in the collection of the debt to AT&T.

Even though there is a genuine issue about whether Ms. Walton actually owed the money, whether she did or did not is not material to resolving the cross-motions for summary judgment. Because this issue must be evaluated in the light most favorable to Ms. Walton, the court assumes for purposes of summary judgment that she did not, as of EOS's initial communication in January 2015, owe AT&T.

<u>Whether the AT&T Account EOS Sought to Collect Was Ms. Walton's Account</u>

EOS contends that the AT&T account which was the subject of its January 27, 2015 collection letter and later telephone calls with Ms. Walton and the subject of EOS's reporting to credit reporting agencies is "without question for Plaintiff's

---

[19]    The court does not rely on Ms. Walton's statement about what AT&T allegedly told her in a phone call; as the court earlier ruled, that particular testimony in paragraph 9 is inadmissible hearsay.

AT&T Account." (*See* EOS Statement of Material Facts not in Dispute, ¶ 2, Dkt. 93 at p. 2). Ms. Walton claims there is a factual dispute based on the difference between the account number AT&T had used in communications with her about the U-verse television services and the AT&T account number listed on EOS's January 27, 2015 collection letter. (*See* Walton response to defendant's statement of material facts, Dkt. 103 at p. 2).

The account number used by AT&T in its communications with Ms. Walton (and which Ms. Walton states was the correct number for her U-verse television services) was 119864170. This number is shown on AT&T's October 11, 2014 collection letter to Ms. Walton, stating she owes $268.47 as the balance due on AT&T account number 119864170. It is also shown on Ms. Walton's October 19, 2015 receipt from AT&T when she paid $268.47 on account number 119864170. (The collection letter is at Dkt. 106-15; the receipt is Walton Dep. Ex. 4, Dkt. 93-3 at p. 34).

When AT&T assigned, on January 23, 2015, Ms. Walton's U-verse account to EOS for collection, AT&T gave EOS a block of information about Ms. Walton's account. (Ribeiro Declaration, Dkt. 93-5, ¶¶ 6-8 and Ex. B thereto). The information supplied by AT&T, and on which EOS relied, listed Ms. Walton's AT&T account number as 864119170. (*Id.*) Thus, the AT&T account number supplied by AT&T to EOS (**864**119170) is a shift of the first three numbers to the positions of the second three numbers as compared to the AT&T account number AT&T had used in communicating with Ms. Walton (119**864**170). All of the other data points

supplied by AT&T to EOS about Ms. Walton's account are indisputably accurate and match AT&T's October 11, 2014 collection communication to Ms. Walton (her name, home address, P. O. Box mailing address, last four digits of her Social Security number, and the claimed balance due of $268.47).  (*Compare* AT&T's October 11, 2014 letter to Ms. Walton, at Dkt. 106-15 to AT&T's data information supplied to EOS, Dkt. 93-5 at p. 23).  The only reasonable inference that can be drawn from the evidence is that AT&T had transposed Ms. Walton's account number when it supplied information to EOS, but the account itself is one and the same.

Ms. Walton's suggestion that there might be another Deborah Walton or some other person out there in the world who happened to share with her all of these data points, and is the real owner of account number 864119170, is not a reasonable inference to draw from any record evidence.  The raising of "metaphysical doubt" or "sheer speculation" divorced from evidence or logic is insufficient.  In ruling on summary judgment, the court must distinguish between a reasonable inference grounded in the evidence and an unreasonable flight of fancy untethered to record evidence.  *See Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999).

<u>Damages Evidence Related to Financial Pacific</u>

The parties debate whether Ms. Walton has submitted admissible evidence that she was damaged by EOS's alleged violations of FCRA, focusing on the evidence surrounding a company named Financial Pacific.  Ms. Walton has sought

26

to establish that, in connection with a business she owns named E-Leases, a broker application was made to Financial Pacific, but Financial Pacific denied the application (allegedly resulting in E-Leases' inability to arrange financing for a customer's alleged business needs) because EOS had reported to credit reporting agencies that she had an outstanding balance of $268.47 to AT&T (though disputed). EOS designated evidence from a representative of Financial Pacific (the Declaration of Peter Fruge, Dkt. 93-7) that he personally reviewed all of the company's records relating to Ms. Walton "or any of her unique personal identifiers," and the only broker application Financial Pacific received from Deborah Walton was in October 2013, and the request was denied. (*Id.,* ¶¶ 6-8). This is about 18 months before EOS reported Ms. Walton's disputed AT&T account to credit reporting agencies.

Ms. Walton has no admissible evidence that creates a genuine issue of fact. She does not have a copy of her alleged application to Financial Pacific (she submitted blank Financial Pacific documents, but blank documents do not raise a reasonable inference that an application was made). She has not claimed that she herself submitted an application to Financial Pacific. She submitted an affidavit from Dominique Fields, who stated that he submitted an application on behalf of E-Leases for Ms. Walton, but that testimony has been stricken as sham testimony because of the conflict with his prior deposition testimony that he *did not* submit an application. Affidavit testimony submitted by Ms. Walton (including her own and her brother's and a client's) about what Financial Pacific allegedly did with her

27

(phantom) application and what a representative from Financial Pacific allegedly told her about such an application has been stricken as inadmissible evidence.

Thus, there is no admissible evidence from which an inference could be drawn that Ms. Walton suffered damages from a denial of brokerage business by Financial Pacific related to any conduct by EOS.

Moreover, as explained in this order, EOS is entitled to summary judgment on Ms. Walton's FCRA claims, so no damages (whether because of Financial Pacific or anything else) arising from Ms. Walton's FCRA claims possibly could be linked to EOS.

At long last, the court now turns to its analysis of the parties' claims for relief under the FDCPA and FCRA.

## <u>Analysis</u>

## I.    **It is appropriate for Ms. Walton to explain on summary judgment how EOS's actions allegedly violated the law even if all legal theories were not specified in her second amended complaint.**

Ms. Walton's second amended complaint alleges that EOS violated both the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.  EOS asks the court to rule that Ms. Walton waived any claims under any statutory provision in these Acts that were not specifically mentioned in her second amended complaint. That argument misapprehends pleading requirements.  A complaint need only provide enough factual information "to give a defendant fair notice of what the claim is and the grounds upon which it rests," and show that it is plausible that the plaintiff is entitled to relief.  *Defender Security Co. v First Mercury Ins. Co.,* 803

F.3d 327, 335 (7th Cir. 2015) (internal citations and quotations omitted). A complaint does not need to identify legal theories, and even specifying an incorrect legal theory is not fatal. *NAACP v. American Family Mut. Ins. Co.,* 978 F.2d 287, 292 (7th Cir. 1992) ("A complaint should limn the grievance and demand relief. It need not identify the law on which the claim rest, and different legal theories therefore do not multiply the number of claims for relief.")

Of course, the time comes when parties must identify their legal theories, because they are the link between facts and a judgment. *See Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir. 1992). In this case, the time came at summary judgment, and it was appropriate (and required) for Ms. Walton to make clear the specific legal theories she asserts underlie her claims.[20]

## II.    Ms. Walton contends that EOS violated the FDCPA.

Ms. Walton's second amended complaint alleges that EOS violated the following subsections of the FDCPA, which the court will address in turn:

- Count I: 15 U.S.C. § 1692c, which (i) prohibits a debt collector from communicating (a) with a debtor at an unusual time or place, including her workplace in certain circumstances and (b) with certain persons regarding another's debt and (ii) requires a debt collector to cease communications in certain circumstances.

- Count II: 15 U.S.C. § 1692d, which prohibits a debt collector from harassing, oppressing, or abusing a person in connection with collection of a debt.

---

[20]    EOS asked Ms. Walton at her deposition about the ways she believed EOS's conduct violated specific provisions of the FDCPA. Ms. Walton stated she would need to consult the language of the FDCPA subsections to answer the question. The questioner did not direct Ms. Walton's attention to any specific statutory language. If EOS had wanted to "set in stone" the bases for her claims, it could have sought that information through an interrogatory and possibly through well-written requests for admission or for documents.

- Count III:  15 U.S.C. § 1692e, which prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with collection of a debt.

- Count IV:  15 U.S.C. § 1692f, which prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt.

- Count V:  15 U.S.C. § 1692g, which requires a debt collector to include certain information in its initial communication with a consumer or, at the latest, within five days after the initial communication, and which addresses debt verification.

**A.  EOS is entitled to summary judgment on claims that it violated Section 1692c.**

Ms. Walton's briefing (either in support of her own motion or in opposition to EOS's motion) is bereft of any argument how any alleged conduct by EOS violated FDCPA Section 1692c, a section that was not mentioned by Ms. Walton in her first legal memorandum.  In her response/reply brief, she states that her claim under Section 1692c is supported by allegations in paragraph 29 of her complaint and that she "incorporates by reference" everything she has filed to support her summary judgment or oppose EOS's.  *See* Dkt. 103 at pp. 16-17.  That's an insufficient response on summary judgment.  A party may not rest on her pleading to defend against summary judgment.[21]  *Celotex,* 477 U.S. at 324. She must affirmatively demonstrate by designating specific facts that there is a genuine issue of material fact that requires trial, *id.,* and must provide some argument addressing the merits

---

[21]    Moreover, paragraph 29 of the second amended complaint alleges Ms. Walton's receipt of a refund check from AT&T; its supposed connection to FDCPA Section 1692c is not apparent anyway.

of the claim.  *See Mink v. Barth Elec. Co.,* 685 F. Supp. 2d 914, 935 (S.D. Ind. 2010) (party waived contention that opposing party was not entitled to summary judgment on claim when party failed to respond to the opposing party's contentions and otherwise failed to address the merits of her own claim).

Ms. Walton provided no argument, until a sur-reply, how any communication by EOS to her or anyone else violated any proscription in FDCPA Section 1692c.  In her sur-reply, she states that she told EOS to "stop contracting [sic] her about debt she did not owe, and this is supported by FDCPA § 1692(c)."  (Dkt. 108 at p. 2). This argument comes too late.  A sur-reply (or even a reply) cannot raise a new argument to which the opposing party did not have an opportunity to respond.  *See Darif,* 739 F.3d at 337. The argument is therefore waived.  And even if it were not waived, the argument would not succeed. Ms. Walton did not cite to any evidence to establish that EOS continued to contact her after she may have told EOS to stop contacting her.  The evidence on summary judgment is that EOS sent Ms. Walton two letters only (an initial dunning letter and a verification letter) and communicated by telephone with Ms. Walton when she called EOS.

EOS is entitled to summary judgment on Ms. Walton's claim that EOS violated FDCPA Section 1692c.

### B. EOS is entitled to summary judgment on claims that it violated Section 1692d.

Similar to her claim under FDCPA Section 1692c, Ms. Walton's briefing (either in support of her own or in opposition to EOS's motion) is bereft of any argument how any of EOS's alleged conduct violated FDCPA Section 1692d. That

31

section was not mentioned by Ms. Walton in her first legal memorandum.  In her response/reply brief, she states that her claim under FDCPA Section 1692d is supported by allegations in paragraph 32 of her amended complaint and that she "incorporates by reference" everything she has filed to support her summary judgment or oppose EOS's.  *See* Dkt. 103 at pp. 16-17.  As explained above, that's an insufficient response on summary judgment.

Moreover, paragraph 32 of her amended complaint alleges that EOS "is now reporting the AT&T debt to Trans Union and they continue to report to Experian," but that allegation has no apparent connection to Section 1692d and any facts in this case relevant to the FDCPA.  Section 1692d prohibits a debt collector from engaging in conduct, "the natural consequence of which is to harass, oppress, or abuse any person in connection" with collecting a debt, such as threats of violence or other harm, use of profane language, or repeated and continuous telephone calls "with intent to annoy, abuse, or harass."  There is no evidence of any behavior by EOS that remotely can be characterized as harassing in nature, oppressive, or abusive.  The two letters EOS sent to Ms. Walton—the January 27, 2015 collection letter and the April 7, 2015 verification letter—do not contain any abusive language or threats.  None of the transcribed telephone conversations between Ms. Walton and EOS (and Ms. Walton initiated the calls) reflect any abusive language or threats. Indeed, the transcription of the calls demonstrates that EOS representatives were unfailingly polite to Ms. Walton.

EOS is therefore entitled to summary judgment on Ms. Walton's claims that it violated FDCPA Section 1692d.

### C. EOS is entitled to summary judgment on Ms. Walton's claims that it violated 1692e.

FDCPA Section 1692e broadly prohibits false, deceptive, or misleading representations or means in connection with collecting a debt, and lists examples in subsections (1) through (16) of representations or means that violate Section 1692e. In her opening brief and response/reply brief, Ms. Walton argues that EOS violated Section 1692e(8), which makes unlawful:

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(*See* Walton opening brief, Dkt. 88, at pp. 9, 13-15, and response/reply brief, Dkt. 103 at pp. 17-18).

She argues that EOS's communications with credit reporting agencies were false because EOS allegedly (a) communicated to credit reporting agencies an inaccurate AT&T account number and (b) did not communicate to credit reporting agencies that Ms. Walton disputed the AT&T debt. There are no facts, or reasonable inferences from facts, to support Ms. Walton's allegations. Rather, the undisputed facts establish that EOS's reporting of the AT&T debt to credit reporting agencies *did not* include an AT&T account number (EOS used its own internal collection account number) and did disclose that the AT&T debt was

33

disputed. (*See* Ribeiro Decl., Dkt. 93-5, ¶¶ 10-12).[22]   Because the entire foundation on which Ms. Walton built her claim under Section 1692e crumbles in light of the undisputed facts, EOS is entitled to summary judgment on Ms. Walton's claims that it violated Section 1692e.

In her sur-reply brief, Ms. Walton raises a new theory why EOS violated Section 1692e.  She asserts that EOS's use of the transposed AT&T account number, as provided "to the Plaintiff and the Credit Reporting Agencies" is a false representation of "the character" of a debt, and thus violates the plain language of Section 1692e(2), which prohibits a false representation of the "character, amount, or legal status" of a debt.  As a new argument raised in a sur-reply brief to which EOS did not have a fair opportunity to respond, the argument is waived.

The argument would fail on its merits anyway. There is no admissible evidence that EOS provided the transposed AT&T account number to any credit reporting agency.  In addition, Ms. Walton cites no authority that the use of a transposed account number logically can be characterized as a false representation of "the character" of a debt. A debt's "character" logically refers to its type in some way, such as whether it is a legally enforceable debt.  *See McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1020 (7th Cir. 2014).

---

[22]    The only reference to the transposed AT&T account number was made by Ms. Walton in her second ACDV report (Walton Dep. Ex. 13, Dkt. 93-3 at pp. 32-33) when, in May 2015, she lodged a dispute with credit reporting agencies that "EOS stated I owed for U-Verse acct 864119170. Actual ATT Acct 119864170. ATT sent refund check indicating I did not owe an addtl amount."

EOS did provide the transposed AT&T account number to Ms. Walton in two communications (the initial January 27, 2015 dunning letter and the subsequent April 2015 verification letter), and perhaps her argument on sur-reply (but nowhere else in her briefing) is that EOS violated Section 1692e's proscription against false communications in the collection of a debt because a false communication was made to her by the use of an AT&T account number by EOS (864119170) that did not perfectly match the AT&T account number (119864170) she had from an earlier October 2014 letter (or other unknown communications) from AT&T to her. This argument comes too late, however. Ms. Walton did not raise it until her sur-reply brief, and it is waived.[23]

Because Ms. Walton opposed summary judgment on her FDCPA Section 1692e claim with assertions that EOS communicated a false AT&T account to credit reporting agencies and did not communicate to them that the debt was disputed, and the undisputed facts do not support those assertions, EOS is entitled to summary judgment on her claims that it violated FDCPA Section 1692e.

### D. EOS is entitled to summary judgment on Ms. Walton's claims that it violated 1692f.

Section 1692f broadly prohibits the use of unfair or unconscionable means to collect a debt and provides examples in subsections (1) through (8) of such

---

[23]    By not raising it until her sur-reply brief, the parties did not brief the legal issues that arise when a debtor asserts that a dunning letter was false and misleading. *E.g., Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 645-46 (7th Cir. 2009). Thus the court does not have the benefit of any arguments by the parties on this matter; waiver is an appropriate result.

prohibited means. The examples relate to trickery, things such as collecting charges that are not authorized by the original debt agreement, shenanigans with post-dated checks given by a debtor, and threatening to take a debtor's property when there is no right to take it. Ms. Walton's opening brief did not mention Section 1692f. In her response/reply brief, Ms. Walton argues that EOS violated Section 1692f because when its employee Andrew McCrevan responded to Ms. Walton's April 2015 Automated Consumer Dispute Verification concerning credit reporting, he only verified Ms. Walton's AT&T debt against the information EOS had been given by AT&T when it assigned the debt and did not separately call AT&T. This issue—whether Mr. McCrevan should have done more in responding to an ACDV— is an issue under FCRA, and will be analyzed in connection with Ms. Walton's FCRA claims.

Ms. Walton has not shown that any of EOS's debt collection activities in connection with her AT&T debt are in any way akin to the trickery described in Section 1692f. The worst thing EOS did is include a transposed AT&T account number on two communications with Ms. Walton—because AT&T itself had supplied to EOS the transposed AT&T account number as Ms. Walton's. No reasonable jury could conclude that EOS's collection efforts used "unfair or unconscionable" means.

EOS is therefore entitled to summary judgment on Ms. Walton's claims that it violated FDCPA Section 1692f.

### E. EOS is entitled to summary judgment on claims that it violated Section 1692g.

Ms. Walton's last claim under the FDCPA is that EOS violated FDCPA Section 1692g because it allegedly did not properly validate her AT&T debt after she disputed it. This claim concerns EOS's April 7, 2015 "validation" letter sent to Ms. Walton. (Dkt. 106-5). Ms. Walton did not address Section 1692g in her opening brief, but in her response/reply brief, she asserts that EOS did not properly validate the debt because it did not contact AT&T after Ms. Walton had told EOS that the account was not hers and she did not owe any money to AT&T. (Dkt. 103 at pp. 19-20).[24] A debt collector's verification under Section 1692g requires it only to confirm to the debtor/consumer in writing that the amount being demanded is what the original creditor is claiming is owed. *Zaborac v. Mutual Hospital Serv., Inc.,* 2004 WL 2538643 at *2-3 (S.D. Ind. Oct. 7, 2004) (debt verification under Section 1692g "requires only a written confirmation that the debt collector is demanding what the creditor claims is owed"; "Details of the alleged debt are not required"). *Duensing v. Citibank N.A.,* 2012 WL 3108878 at *9-10 (N.D. Ind. July 31, 2012) (same).

---

[24]    There are issues of fact whether Ms. Walton sent a written dispute to EOS within 30 days of her receipt of EOS's January collection letter. Ms. Walton insists she sent a letter on January 29 (although no such letter appears in the summary judgment record) and that she sent a second letter by certified mail on or about the date of the letter, or February 5, 2015. It is undisputed that letter was not signed for by the EOS addressee until March 14, 2015, and thus was not received by EOS until at least that date. But even if Ms. Walton had not sent a written dispute within 30 days of her receipt of EOS's January collection letter, EOS still provided the April 7, 2015 verification letter, and Ms. Walton's claim under Section 1692g focuses solely on whether EOS did enough to verify her debt before sending the April 7 letter.

In verifying Ms. Walton's debt, EOS reviewed the information it had received from AT&T. That information matched the information EOS had included on its own collection letter. Thus, EOS was able to confirm that the amount being demanded is what AT&T had told EOS Ms. Walton owed and under what account. Ms. Walton's insistence that EOS was required to telephone AT&T and get more information from it to "validate" the debt is not supported by any legal authority. Furthermore, as the court addressed *supra* at pp. 24-26, the account EOS sought to collect from Ms. Walton was in fact Ms. Walton's AT&T account for U-verse services. The existence of ATT's transposed account number does not change that fact.

EOS is therefore entitled to summary judgment on Ms. Walton's claims that it violated FDCPA Section 1692g.

## F. Undisputed facts entitle EOS to summary judgment on its bona fide error defense.

EOS also seeks judgment on its *bona fide* error defense to liability under the FDCPA. As provided by FDCPA Section 1692k, a debt collector cannot be held liable if it "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Ms. Walton's entire case is built on EOS's use of the transposed AT&T account number in its two communications to her and the fact EOS did not contact AT&T after Ms. Walton's letter(s) and telephone calls in which she told EOS that the account was not hers and she did not owe the money. As the court addressed

*supra* at pp. 24-26, the AT&T account for allegedly unpaid U-verse television services which EOS sought to collect from Ms. Walton and which was reported to the credit agencies as disputed was, in fact, Ms. Walton's account from AT&T for allegedly unpaid U-verse television services. EOS's only mistake was listing on its two letters to Ms. Walton an AT&T account number of 864119170, which was a transposition of Ms. Walton's real AT&T account number of 119864170 (a mistake of fact, not of law, as Ms. Walton suggests). The information AT&T supplied to EOS when it assigned Ms. Walton's account is *the* source of the mistake, as shown by Exhibit B to the Ribeiro Declaration. EOS had a right to, and did, rely on that information. Moreover, immediately upon Ms. Walton's notification in May 2015 in her second ACDV that the account number EOS used in its letters was different from her AT&T account number (with the transposed three numbers), EOS deleted the account from credit reporting and took no further action in connection with the AT&T debt.

These undisputed facts entitle EOS to summary judgment that any violation of the FDCPA was not intentional and was the result of a bona fide error notwithstanding its procedure to avoid such an error by checking its information against the information supplied by AT&T (and finding a complete match). *See Hyman v. Tate,* 362 F.3d 965, 968 (7th Cir. 2004) ("[T]he FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense"; defense applied where debt collector relied on information provided by the creditor and had a procedure to remove accounts that were mistakenly

placed with the collector);  *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025 (6th Cir. 1992) (bona fide error defense applied when creditor mistakenly added ten more dollars to the amount owed when it assigned the debt to the debt collector; debt collector was not required to make an independent investigation of the debt).

The court now turns to Ms. Walton's claims under the Fair Credit Reporting Act.

### III.    Ms. Walton contends that EOS violated FCRA.

Ms. Walton contends that EOS violated two sections of FCRA (15 U.S.C. § 1681s-2(a) and § 1681s-2(b)), and that she is entitled to relief for those violations under FCRA Section 1681n (providing a right of action for damages against a person who *willfully* violates a requirement under Section 1681) and FCRA Section 1681o (providing a right of action for damages against a person who *negligently* fails to comply with a requirement under Section 1681).  Because, as explained below, EOS is entitled to summary judgment on Ms. Walton's claims that EOS even violated a requirement under FCRA, it is not necessary for the court to address the parties' arguments on whether there was a "willful" violation or a "negligent" violation.  It is also not necessary for the court to address the parties' arguments whether there exists any admissible evidence that Ms. Walton suffered damages compensable under Sections 1681n or 1681o.[25]

---

[25]    Because the parties' briefing focused a lot of attention on Ms. Walton's alleged damages because Financial Pacific purportedly denied her broker application, the court did address *supra* at pp. 26-28 that there is no admissible evidence of any connection between EOS's alleged conduct and any denial by Financial Pacific of a broker application.

**A. EOS is entitled to summary judgment on claims under FCRA Section 1681s-2(a).**

FCRA Section 1681s-2(a) addresses, generally, a duty of a person furnishing information (like EOS) to credit reporting agencies (like Trans Union and Experian) to not furnish any information the person "knows or has reasonable cause to believe"[26] is inaccurate (*see* 1681s-2(a)(1)(A)), and a duty to correct and update information furnished to credit reporting agencies (*see* 1681s-2(a)(2)(B)).  In her legal memoranda, Ms. Walton uses the language from these subsections of 1681s-2(a) (*see* Dkt. 103 at p. 22 and Dkt. 88 at p. 16)[27], and contends EOS violated these requirements, entitling her to damages for negligent or willful non-compliance.

But there is no private right of action to enforce Section 1681s-2(a).  *Purcell v. Bank of America,* 659 F.3d 622, 623 (7th Cir. 2011) (under FCRA, as provided at Section 1681s-2(c)(1), the requirements of subsection (a) are enforced exclusively by state and federal agencies; there is no private civil action available for claims under subsection (a)); *Perry v. First Nat'l Bank,* 459 F.3d 816, 822 (7th Cir. 2006) (FCRA exempts from private actions any failure to comply with Section 1681s-2(a)).

---

[26]    The term "reasonable cause to believe that information is inaccurate" "means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information."  15 U.S.C. 1681s-2(a)(1)(D).

[27]    In her original brief, at Dkt. 88, Ms. Walton claimed that these requirements are contained in Section 1681s-2(b).  That is not correct. The FCRA requirements Ms. Walton recites at p. 16 of Dkt. 88 are in Section 1681s-2(a), not in s-2**(b).**

EOS is therefore entitled to summary judgment on any claims that it violated requirements under Section 1681s-2(a).

## B. EOS is entitled to summary judgment on claims under FCRA Section 1681s-2(b).

Ms. Walton's legal memoranda also rely on 15 U.S.C. § 1681s-2(b), which lists requirements when a furnisher of information (like EOS) is given notice by a credit reporting agency that a consumer disputes information that was provided by the furnisher. It provides, in relevant part:

(b)(1)  After receiving notice pursuant to section 1681i(a)(2)[28] of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)  report the results of the investigation to the consumer reporting agency;

(D)  if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . ; and

(E)  if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified, [then, for purposes of credit reporting,] promptly—

(i)    modify that item of information;

(ii)    delete that item of information; or

---

[28]    Section 1681i(a)(2) prescribes notice that a credit reporting agency must give to a furnisher of information when the credit reporting agency receives notice from a consumer that she disputes information in her credit report.  The two ACDV documents in the summary judgment record (Automated Consumer Dispute Verification) reflect the disputes Ms. Walton made to the credit reporting agencies regarding information furnished by EOS.

(iii)    permanently block the reporting of that item of information.

In short, this subsection provides a cause of action where the investigation of the consumer's dispute to the reporting agency is not a reasonable one.  *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005).  Ms. Walton argues that EOS violated this statute because it allegedly did not conduct a reasonable investigation when she made her two ACDV disputes, or at least there is a genuine issue of material fact whether its investigation was reasonable.  *See Westra,* 409 F.3d at 827 ("Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.")

Ms. Walton made two disputes to credit reporting agencies regarding EOS's report of the AT&T account. Her first dispute stated in its entirety, "submitted a letter stating that this does not belong to me."  (Walton Dep. Ex. 12, Dkt. 93-3 at p. 30).  EOS's investigation consisted of its review of the information it had received from AT&T about the account and compared to the information it had reported to the credit reporting agencies about the account.  As noted previously, all of the information matched—including Ms. Walton's name, her addresses, the last four digits of her social security number, and the amount due. Further, EOS reported that Ms. Walton disputed the account. EOS therefore verified its reporting of the AT&T debt.[29]

---

[29]    The undisputed evidence also establishes that EOS did not use AT&T's account number in its reporting of the AT&T debt to the credit reporting agencies; it

Ms. Walton contends that EOS was required to do more than compare the information it had received from AT&T with the information it reported to the credit reporting agencies. EOS's investigation was incomplete, she argues, because a reasonable investigation would have required EOS to contact AT&T and do more digging about the accuracy of the information EOS had been provided by AT&T.

The reasonableness of an investigation depends upon the nature of the dispute that was made to the credit reporting agency. *Lang v. TCF Nat'l Bank,* 338 Fed. Appx. 541, 543-44 (7th Cir. 2009) (as provided by the statute, the obligation to investigate is limited to the disputed information reported to it by the credit reporting agency, even if the furnisher knew (or could have known) about some other dispute by other means). EOS cannot be liable for addressing a matter that was not made on the ACDV report. *Id.,* citing *Westra,* 409 F.3d 825, 827 (7th Cir. 2005) (the furnisher of information on the credit report is not liable for not addressing a dispute that the credit reporting agency did not provide as the nature of the consumer's dispute).

Ms. Walton's dispute was "this does not belong to me." EOS researched the information it had received from AT&T and, based on that information (the 100% matching of data, including Ms. Walton's personal data), did not find a mistake and

---

used its own account number. Ms. Walton's contention that EOS reported an inaccurate AT&T account number to the credit reporting agencies is not supported by any admissible evidence. Ms. Walton's contention that EOS did not report the account as disputed is also not supported by any admissible evidence. The undisputed evidence before the court on summary judgment is that EOS reported the AT&T account as disputed.

verified the account.  No reasonable jury could find it unreasonable that EOS limited its investigation whether an account "belonged" to the consumer by checking whether the data received on the account matched that consumer (name, addresses, social security number).  *See Westra,* 409 F.3d at 827 (investigation of consumer dispute that account did not belong to him was reasonable as a matter of law where furnisher verified the name, address, date of birth for the account; FCRA does not mandate contacting the consumer to find out more about the dispute; "requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient").

Moreover, as the court addressed *supra* at pp. 24-26, the AT&T account reported by EOS did belong to Ms. Walton; no reasonable jury could conclude otherwise based on the summary judgment record.[30]

Ms. Walton does not suggest that EOS's investigation of her second ACDV dispute was unreasonable.  Under the undisputed facts, no jury could conclude that EOS did anything wrong in investigating and responding to the second ACDV dispute.  In her second dispute, Ms. Walton (for the first time) identified her dispute as relating specifically to an incorrect AT&T account number, plus a contention that she does not owe AT&T any money.  She said, "EOS stated I owed for Uverse Acct

---

[30]    Ms. Walton's assertion that "the case law in this circuit and elsewhere is clear that a furnisher reporting a collection must under circumstances such as these, contact the original Creditor as part of its investigation" (Dkt. 103 at pp. 24, 26; Dkt. 88 at p. 20; Dkt. 108 at p. 8) is not supported by citation to any case law.

864119170. Actual AT&T Acct 119864170. AT&T sent refund check indicating I did not owe an addtl amount." In response to this dispute, EOS deleted the account.

Because EOS's investigation (and responses) to both of Ms. Walton's ACDV disputes were reasonable as a matter of law, EOS is entitled to summary judgment on Ms. Walton's claim that it violated FCRA Section 1681s-2(b).

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge GRANT defendant EOS's motion for summary judgment (Dkts. 93, 94) and DENY plaintiff Deborah Walton's motion for summary judgment (Dkts. 87, 91, and 92) and enter final judgment in favor of defendant EOS.

**Any objections to this report and recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  The parties should not anticipate *any* extension of this deadline or any other related briefing deadlines.**

IT IS SO RECOMMENDED.

Dated:  July 24, 2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record by email through the court's ECF system

Via United States mail:
DEBORAH WALTON
12878 Mayfair Lane
Carmel, IN  46032