```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF INDIANA
                        INDIANAPOLIS DIVISION
```

| | |
|---|---|
| DEBORAH WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-00822-TWP-DML |
| | ) |
| EOS CCA, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Deborah Walton's ("Ms. Walton") Objections to the Magistrate Judge's Report and Recommendation on Cross-Motions for Summary Judgment, ([Filing No. 111](#)). On January 6, 2017, the Magistrate Judge issued a Report and Recommendation, pursuant to Federal Rule of Civil Procedure 72, recommending that the Court grant Defendant EOS CCA's ("EOS") Motion for Summary Judgment and deny Ms. Walton's Cross Motion for Summary Judgment ([Filing No. 110](#)) (the "Report"). Ms. Walton filed this action seeking damages against EOS for violations of the Fair Debt Collection Practices Act, 91 Stat. 874, 15 U.S.C. § 1682, *et seq*., ("FDCPA") and the Fair Credit Reporting Act, 84 Stat. 1128, 15 U.S.C. § 1681, *et seq*. ("FCRA"), arising out of collection efforts by EOS of a consumer debt Ms. Walton allegedly owed to AT&T for U-verse television services. For the reasons explained herein, Ms. Walton's Objections are overruled and final judgment shall be entered in favor of EOS on all of Ms. Walton's claims.

## I. BACKGROUND

As noted in the Report, Ms. Walton filed several documents which she described as motions for partial summary judgment. The Court will treat the three motions, Filing No. 87; Filing No. 91; Filing No. 92, collectively as Ms. Walton's Motion for Summary Judgment. On December 19, 2016, EOS filed its Cross-Motion for Summary Judgment (Filing No. 94). The Court notes that the document at Filing No. 93 is not a motion; rather it is EOS's Memorandum of Law in Support of its Cross-Motion. Accordingly, this Entry will correct the record to reflect only Filing No. 94 as EOS's Cross-Motion.

The Report accurately states the undisputed facts which the Court only summarizes in this Entry. (Filing No. 110 at 16-23.) EOS, identifying itself as a debt collector, sent Ms. Walton a letter dated January 27, 2015, seeking to collect a debt allegedly owed by Ms. Walton to AT&T. The debt was for U-verse television services at Ms. Walton's home in Carmel, Indiana. The letter identified the AT&T account number as 864119170 and the total due as $268.47. It also identified an account number assigned by EOS (13075918). Ms. Walton received the letter on or about January 29, 2015. The AT&T account number (864119170) and the exact amount due ($268.47) were supplied by AT&T to EOS when AT&T assigned the account to EOS. EOS relied on the accuracy of the information supplied by AT&T about Ms. Walton. On several occasions Ms. Walton communicated with EOS both on the telephone and in writing and denied that she had an account or owed a debt to AT&T. However, Ms. Walton falsely denied the last four digits of her social security to EOS representatives. In March 2015, EOS reported the AT&T account to Experian and Trans Union credit reporting agencies. Soon thereafter, EOS received through the E-Oscar online system run by the credit bureaus which stockpiles every discovery dispute made to credit bureaus, an Automated Consumer Disputer Verification ("ACDV") report. Two disputes

regarding credit reporting are shown in the record: in her first ACDV, Ms. Walton wrote that she submitted a letter stating that the debt did not belong to her. That ACDV was processed by Andrew McCrevan ("Mr. McCrevan"), an EOS employee who verified Ms. Walton's account. In her second ACDV, Ms. Walton wrote: "EOS stated I owed for Uverse Acct 864119170. Actual ATT Acct 119864170. ATT sent refund check indicating I did not owe an addtl amount". ([Filing No. 93-3 at 32](#).) After the second ACDV, EOS closed its collection account and requested that Experian and Trans Union delete or close the account. On October 19, 2015, Ms. Walton paid $268.47 to AT&T for the outstanding U-verse bill because she needed to buy a new iPhone, and not because she believed she owed the debt.

Ms. Walton identifies four material facts that she contends are in dispute: (1) Ms. Walton did not owe the underlying debt to AT&T that EOS was attempting to collect; (2) she disputed that debt, verbally and in writing; (3) EOS did not communicate with AT&T to verify the accuracy of the debt in response to Ms. Walton's disputes; and (4) EOS did not comply with the FDCPA, or the FCRA. ([Filing No. 111 at 2](#).) Ms. Walton does not connect these disputed facts to any particular findings, conclusions, recommendations, or other parts of the Report, neither does she explain the effects on the Report's substance and recommendations if these asserted and mischaracterized facts are corrected. Therefore, the Court examines only the identified factual issues.

**A.**     **<u>Whether Ms. Walton owed the underlying debt</u>.**

The Report makes no finding that Ms. Walton owed the debt. To the contrary, it repeatedly uses the terms "debt allegedly owed" or "alleged debt" ([Filing No. 110 at 16](#), 19, 20, 21). It treats this factual dispute under the heading "Certain Fact Disputes Between the Parties," *id*., at 23. The Report specifically declares that "there is a genuine issue about whether Ms. Walton actually owed

3

the money," *id*., at 24; it explicitly states that, for the purposes of the summary judgment motion, it assumes that Ms. Walton did not owe the alleged debt. *id*. In addition, and the Report concludes that whether Ms. Walton actually owed the debt or not "is not material to resolving the cross-motions for summary judgment," *id*. The Report contains no finding that it is undisputed that Ms. Walton owed the underlying debt to AT&T. Reviewing this part of the Report *de novo*, the Court concludes that the Report's treatment of this factual issue is correct.

**B.      Whether Ms. Walton disputed the Debt.**

There is no finding in the Report that Ms. Walton did not dispute the debt. To the contrary, the Report recounts Ms. Walton's three telephone calls to EOS, a certified letter she wrote to EOS, and two ACDV reports generated by Ms. Walton's reports to the credit reporting agencies. The Report describes all of these communications as disputing the debt and all are discussed under the heading "Undisputed Material Facts." Filing No. 110 at 16-23. The Report explicitly finds that Ms. Walton disputed the debt. Reviewing this part of the Report *de novo*, the Court concludes that the Report's treatment of these factual issues is correct.

**C.      Whether EOS contacted AT&T directly to verify the debt.**

The Report neither finds nor describes any communication that EOS had with AT&T to verify Ms. Walton's alleged debt. To the contrary, the Report lists as undisputed facts that (1) the only verification of the debt that EOS performed in response to Ms. Walton's certified letter was to check EOS's data against the information originally sent to it by AT&T, Filing No. 110 at 20; (2) the only verification that EOS performed in response to the first ACDV was, again, to check EOS's data against AT&T's original information; (3) Mr. McCrevan, EOS's employee who handled Ms. Walton's collection account, did not contact AT&T, *id*., at 22; and (4) in response to the second ACDV, EOS closed its collection account without attempting to verify the information with

4

AT&T, *id*. Reviewing this part of the Report *de novo*, the Court concludes that the Report's treatment of these factual issues is correct.

D.     **Whether EOS complied with the FDCPA and the FCRA.**

Ms. Walton's final contention of disputed fact, that EOS did not comply with the FDCPA and the FRCA, is a conclusory statement. This contention is not a description of a disputed issue of material fact, but merely an abbreviation of Ms. Walton's legal claims in this law suit. Because this contention does not specify any objection to the Report no analysis is required.

## II.     LEGAL STANDARD

A.     **Magistrate Judge Review.**

A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur*, 577 F.3d at 760. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). After a magistrate judge makes a report and recommendation, either party may object within fourteen days. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Rule 72(b)'s requirement for "specific" objections requires objecting parties only to specify the findings, conclusions, recommendations, or other specific parts of a magistrate judge's report and recommendation to which they object in order to invoke *de novo* review; they are not required to present the legal or factual bases for their objections. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739-42 (7th Cir. 1999). Although a judge may reconsider all parts of a magistrate judge's recommendation, she need only review for clear error those portions to which no objection has

been made. *Johnson*, 170 F.3d at 739. "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* A *pro se* party's objections should be given a liberal construction. *See Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998) ("Our guiding principle is, again, the well-known admonition that district courts must construe *pro se* pleadings liberally.").

**B.** **<u>Summary Judgment Standard</u>.**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in

search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

### III.  DISCUSSION

#### A.  EOS Violated the FDCPA.

Ms. Walton argues that Mr. McCrevan admits that he did not validate whether she owed the debt by directly contacting AT&T, as required by the FDCPA, and "they" (EOS, presumably) boasted about why they never validated the debt with AT&T. ([Filing No. 111 at 3](#) ¶ 2.)  In support, Ms. Walton cites pages 72 through 78 from Mr. McCrevan's deposition transcript, attached as Exhibit A to the Objections.  *Id.*  She does not cite any specific content in the ten pages of that exhibit and develops no arguments therefrom.  She does not specify any error in the Report that these excerpts identify.

On the Court's review, it is clear that these excerpts merely record Mr. McCrevan's testimony that, in response to Ms. Walton's telephone calls, certified letter, and the first ACDV, he did not contact AT&T to verify the accuracy of the debt that AT&T reported to EOS.  He only verified EOS's data with the information originally supplied by AT&T.  As noted above, the Report considered these facts to be undisputed, and it further found that whether Ms. Walton owed the debt is immaterial to resolution of the cross-motions for summary judgment.  Ms. Walton offers no legal argument to the contrary.  Reviewing this part of the Report *de novo*, the Court concludes that the Report's treatment of this issue is correct.

#### B.  EOS's violation of the FCRA was willful.

Ms. Walton argues that the Report's misinterpretation of a portion of Mr. McCrevan's deposition testimony led to an inference not being drawn in her favor, which is contrary to the summary judgment standard.  The Report found that, when handling the first ACDV that was

7

generated by Ms. Walton's first dispute to the credit reporting agency, "Mr. McCrevan did not contact AT&T. He did not believe he had a reason to question the accuracy of the data that EOS had received from AT&T." Filing No. 110 at 22 (citation omitted). The Report cites Mr. McCrevan's testimony at p. 75, line 25, through p. 76, line 4, and p. 77, lines 6-11. Filing No. 111-1 at 7-9. Ms. Walton contends that Mr. McCrevan testified that he did not contact AT&T to check the accuracy of the data it sent regarding the alleged debt as a matter of EOS *policy*, not because he believed that he did not have a reason to question the accuracy of the data in Ms. Walton's particular case.

Ms. Walton is correct that the deposition passage that the Report cites does not support its finding that Mr. McCrevan did not believe that he had a reason to question the accuracy of AT&T's information regarding Ms. Walton's debt:

> Q. Well, when your process – when you used to process ACDVs, did you at any point have any reason to question the accuracy of the data you're getting from the original creditor?
>
> A. No.

Filing No. 111-1 at 7-8.[1] Here, Mr. McCrevan is addressing his handling of ACDVs in general, not Ms. Walton's specific debt. However, later in his deposition, Mr. McCrevan does testify that he did not have a reason to question the accuracy of AT&T's information specifically regarding Ms. Walton's debt. Filing No. 111-1 at 8-9.

If Ms. Walton is arguing that the Report should have found that EOS had a policy to not confirm the accuracy of information with original creditors when debtors disputed debts, she does not explain why such a finding is relevant. The Report held that, under the FDCPA, debt collectors are required to verify only that the debt information they have matches the data received from the

---

[1] In the Report's second citation to Mr. McCrevan's deposition, Mr. McCrevan only confirms that he never questioned the accuracy of AT&T's data.

original creditors; they are not required to contact the original creditors to confirm the accuracy of that data. (Filing No. 110 at 37, citing *Zaborac v. Mutual Hospital Serv., Inc.*, 2004 WL 2538643, *2-3 (S.D. Ind., Oct. 7, 2004); *Duensing v. Citibank, N.A.*, 2012 WL 3108878, *9-10 (N.D. Ind., July 31, 2012)). The Report also held that, under the FCRA, the reasonableness of a furnisher's investigation into an ACDV depends on the nature of the dispute made to the credit reporting agency and transmitted to the debt collector, (Filing No. 110 at 44, citing *Lang v. TCF Nat'l Bank*, 338 Fed. Appx. 541, 543-44 (7th Cir. 2009); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)), and that no reasonable jury could find it unreasonable, based on the nature of the ACDV generated from Ms. Walton's first dispute, that EOS's investigation was limited to confirming its information against the data originally supplied by AT&T. (Filing No. 110 at 44-45.) Ms. Walton did not suggest that EOS's investigation of the second ACDV was unreasonable. (Filing No. 110 at 45.) Ms. Walton did not offer legal authority to the contrary.

The Court has reviewed *de novo* the parties' arguments, the submitted evidence, and the Report's findings and authorities on this point, and it concludes that the Report's analysis is correct and its holdings are sound.

**C.      The Report Misinterpreted Mr. McCrevan's Deposition.**

Ms. Walton contends that the Report misinterpreted Mr. McCrevan's testimony regarding the deletion of her account in response to the second ACDV. The Report states: "After the second ACDV, EOS closed its collection account and requested Experian and Trans Union to delete the account. (Ribeiro Declaration, ¶ 16). In other words, EOS's response to this ACDV was to "delete" the account. (McCrevan Dep., p. 86, lines 18-24)." Filing No. 110 at 22-23. Ms. Walton's second dispute to the credit reporting agencies, which led to the issuance of the second ACDV to EOS, for the first time informed EOS of AT&T's transposition mistake in the U-

9

verse/AT&T account number and of the fact that AT&T had sent Ms. Walton a refund check, signifying that she did not owe anything on the account. *Id*. at 22. No date for EOS's receipt of the second ACDV is apparent, but in his Declaration, Benjamin Ribeiro, EOS's Vice President for Consumer Relations, stated after a review of the pertinent records, that EOS was not informed of the transposition in the account number until late May 2015, ([Filing No. 93-5 at 3](#)), and, on May 29, 2015, EOS closed Ms. Walton's account and requested the credit reporting agencies to delete their accounts. Ms. Walton offers no evidence showing the contrary.

Ms. Walton argues that the evidence shows that EOS did not delete its report to the credit reporting agencies on Ms. Walton's debt until three days after she filed this suit on May 26, 2015, ([Filing No. 111 at 8](#)), but she does not explain the significance, if any, of this timing. She then repeats her argument that, in response to her many communications disputing the debt that began in February 2015, EOS should have verified its information directly with AT&T and, if it had, it would have discovered AT&T's error, ceased its collection efforts, and never made (or cancelled) its report to the credit reporting agencies, before May 29, 2015. She argues that EOS's lack of a policy and procedure to verify debt information directly with original creditors, as required by the FRCA, is reckless disregard of statutory requirements and willful misconduct. [Filing No. 111 at 9](#). Again, Ms. Walton cites no authority for her argument that the FRCA requires furnishers to verify their information with original creditors.

Having reviewed *de novo* the parties' arguments, the pertinent evidence, and the Report's findings and cited authorities on these points, the Court concludes that the Report's analysis is correct that, in the factual context shown on the present motions, the FDCPA required EOS only to verify its data with the information originally supplied by AT&T and not to directly contact AT&T to verify the accuracy of its supplied information, and that a jury reasonably could not find

10

that the nature of the first ACDV required EOS to do more than the same verification. The Report also correctly found that Ms. Walton did not suggest that EOS's response to the second ACDV was unreasonable. Filing No. 110 at 45.

## IV. CONCLUSION

For the reasons stated above, Ms. Walton's Objections to the Report and Recommendation on Cross-Motion for Summary Judgment (Filing No. 111) are **OVERRULED**. Having reviewed for clear error the portions of the Report and Recommendation to which objections were not made, the Court finds no error. The Report and Recommendation (Filing No. 110), as augmented herein, is **ADOPTED** as the entry of the Court.

Therefore, EOS's Cross-Motion for Summary Judgment (Filing No. 94) is **GRANTED** and Ms. Walton's Motion for Partial Summary Judgment (collectively, Filing No. 87; Filing No. 91; Filing No. 92) is **DENIED**. Final judgment will enter in favor of EOS.

**SO ORDERED.**

Date: 9/29/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Deborah Walton
12878 Mayfair Lane
Carmel, Indiana 46032

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

John Paul Ryan
HINSHAW & CULBERTSON, LLP
jryan@hinshawlaw.com

Nabil G. Foster
HINSHAW & CULBERTSON, LLP
nfoster@hinshawlaw.com